# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ILEANA COLLINS, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) **CIVIL ACTION NO.** ) |
| vs. | ) ) ) |
| | ) CLASS ACTION COMPLAINT |
| ROYAL CARIBBEAN CRUISES LTD., RICHARD D. FAIN, BRIAN J. RICE and HENRY L. PUJOL, | ) ) ) **JURY TRIAL DEMANDED** |
| Defendants. | ) ) ) |

Plaintiff, Ileana Collins ("Plaintiff"), alleges the following based upon the investigation of Plaintiff's counsel, which included, among other things, a review of defendants' public documents, conference calls and announcements, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Royal Caribbean Cruises Ltd. ("Royal Caribbean" or the "Company") and securities analysts' reports and advisories about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a federal class action on behalf of purchasers of the securities of Royal Caribbean, who purchased or otherwise acquired Royal Caribbean securities between April 23, 2009 and July 28, 2011, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Royal Caribbean is a global cruise vacation company that operates Royal

Caribbean International, Celebrity Cruises, Pullmantur, Azamara Club Cruises, CDF Croisieres de France, and TUI Cruises through a 50% joint venture. The Company primarily serves the contemporary, premium and deluxe segments of the cruise vacation industry.

3.     On July 27, 2011, after the market closed, Royal Caribbean shocked investors when it disclosed that it had identified errors in its previous accounting treatment of interest expense relating to the amortization of certain financing fees.  As a result, the Company had "revised" its previous financial statements, resulting in (among other things) reduced net income for fiscal years 2009 and 2010.  This accounting error also reduced the Company's 2011 earnings guidance by $0.10 per share.  The next day, financial analysts and reporters pointed out that the defendants had attempted to slide under the radar an additional $0.10 reduction in 2011 full-year earnings, completely unrelated to the accounting issue.

4.     Upon the release of this news, shares of the Company's stock fell $4.50 per share, or over 12.5 percent, to close on July 28, 2011 at $31.26 per share, on unusually heavy trading volume.  In the days that followed, the Company's shares continued to decline, and closed as low as $24.00 per share on August 8, 2011.

5.     The Complaint alleges that, throughout the Class Period, defendants failed to disclose material adverse facts about the Company's financial well-being, business operations, and prospects.  Specifically, the defendants failed to disclose or indicate the following: (1) that defendants had improperly accounted for interest expense related to the amortization of certain financing fees; (2) that as a result, defendants had materially overstated Royal Caribbean's profitability;  (3) that the Company's financial statements were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); (4) that the Company lacked adequate internal and financial controls; (5) that, as a result of the foregoing, the Company's financial

statements were materially false and misleading at all relevant times; and (6) that the defendants' statements that the Company was operating according to plan, along with their statements regarding the Company's earnings guidance and prospects, were lacking in any reasonable basis when made.

6.      As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class Members suffered damages.

<u>**JURISDICTION AND VENUE**</u>

7.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

9.      Venue is proper in this District pursuant to pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).  Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.  Additionally, Royal Caribbean's principal executive offices are located within this District.

10.      In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce.

<u>**PARTIES**</u>

11.      Plaintiff, Ileana Collins, as set forth in the accompanying certification, incorporated by reference herein, purchased Royal Caribbean securities at artificially inflated

prices during the Class Period and has been damaged thereby.

12.     Defendant Royal Caribbean is a corporation organized under the laws of the Republic of Liberia, with its principal executive offices located at 1050 Caribbean Way, Miami, Florida.

13.     Defendant Richard D. Fain ("Fain") was, at all relevant times, the Company's Chief Executive Officer ("CEO") and Chairman of the Board of Directors.

14.     Defendant Brian J. Rice ("Rice") was, at all relevant times, the Company's Executive Vice President and Chief Financial Officer ("CFO").

15.     Defendant Henry J. Pujol ("Pujol") was, at relevant times, the Company's Vice President, Corporate Controller and Principal Accounting Officer.

16.     Defendants Fain, Rice and Pujol are collectively referred to hereinafter as the "Individual Defendants."   The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Royal Caribbean's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and misleading.  The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

17.     Royal Caribbean is a global cruise vacation company that operates Royal Caribbean International, Celebrity Cruises, Pullmantur, Azamara Club Cruises, CDF Croisieres de France, and TUI Cruises through a 50% joint venture.  The Company primarily serves the contemporary, premium and deluxe segments of the cruise vacation industry.

### Materially False and Misleading
### Statements Issued During the Class Period

18.     The Class Period begins on April 23, 2009.  On that day, the Company issued a press release entitled "Royal Caribbean Reports Better Than Expected First Quarter Results Due to Better Revenues and Expenses."  Therein, the Company announced a first quarter 2009 net loss of $36.2 million, or $0.17 per share, along with first quarter revenues of $1.3 billion.

19.     Also on April 23, 2009, the Company filed its Quarterly Report with the SEC on Form 10-Q.  The Company's Form 10-Q was signed by Defendant Rice, and reaffirmed the Company's financial results announced that same day.  Additionally, the Form 10-Q set forth, in relevant part:

**Controls and Procedures**

**Evaluation of Disclosure Controls and Procedures**

Under the supervision and with the participation of our management, including our Chairman and Chief Executive Officer and Executive Vice President and Chief Financial Officer, we carried out an evaluation of the effectiveness of our disclosure controls and procedures, as such term is defined in Exchange Act Rule 13a-15(e), as of the end of the period covered by this quarterly report and concluded that those controls and procedures were effective.

**Changes in Internal Control Over Financial Reporting**

There were no changes in our internal control over financial reporting identified in connection with the evaluation required by paragraph (d) of Exchange Act Rules 13a-15 and 15d-15 during the quarter ended March 31, 2009 that have

materially affected or are reasonably likely to materially affect our internal control over financial reporting.

It should be noted that any system of controls, however well designed and operated, can provide only reasonable, and not absolute, assurance that the objectives of the system will be met. In addition, the design of any control system is based in part upon certain assumptions about the likelihood of future events. Because of these and other inherent limitations of control systems, there is only reasonable assurance that our controls will succeed in achieving their goals under all potential future conditions.

20.     The Company's Form 10-Q also contained Sarbanes-Oxley required

certifications, signed by Defendants Fain and Rice, who stated:

I, [Richard D. Fain/Brian J. Rice], certify that:

1.     I have reviewed this quarterly report on Form 10-Q of Royal Caribbean Cruises Ltd.;

2.     Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.     Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.     The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

a)     Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b)     Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c)     Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the

effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d)     Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.     The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a)     All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b)     Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

*     *     *

In connection with the quarterly report on Form 10-Q for the quarterly period ended March 31, 2009 as filed by Royal Caribbean Cruises Ltd. with the Securities and Exchange Commission on the date hereof (the "Report"), Richard D. Fain, Chairman and Chief Executive Officer, and Brian J. Rice, Executive Vice President and Chief Financial Officer, each certifies pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that to his knowledge:

1.     the Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, and

2.     the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of Royal Caribbean Cruises Ltd.

21.     On January 28, 2010, the Company issued a press release entitled "Royal Caribbean Reports Better Than Expected Fourth Quarter Earnings and 2010 Outlook." For fiscal year 2009, the Company reported net income of $162.4 million, or $0.75 per share, and revenues of $5.9 billion.

22.     On February 23, 2010, Royal Caribbean filed its 2009 Annual Report with the SEC on Form 10-K. The Company's Form 10-K was signed by the Individual Defendants, and

reaffirmed the Company's financial results previously announced on January 28, 2010. The Company's Form 10-K also contained Sarbanes-Oxley required certifications, substantially similar to the certifications contained in ¶ 20, *supra*. Additionally, the Form 10-K set forth in relevant part:

### Item 9A. Controls and Procedures

### Evaluation of Disclosure Controls and Procedures

Under the supervision and with the participation of management, our Chairman and Chief Executive Officer and Executive Vice President and Chief Financial Officer have conducted an evaluation of the effectiveness of our disclosure controls and procedures, as such term is defined in Exchange Act Rule 13a-15(e), as of the end of the period covered by this report and concluded that those controls and procedures were effective.

### Management's Report on Internal Control Over Financial Reporting

Our management is responsible for establishing and maintaining adequate internal control over financial reporting, as such term is defined in Exchange Act Rule 13a-15(f). Under the supervision and with the participation of our management, including our Chairman and Chief Executive Officer and Executive Vice President and Chief Financial Officer, we conducted an evaluation of the effectiveness of our internal control over financial reporting based on the framework in Internal Control-Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission. Based on our evaluation under the framework in Internal Control-Integrated Framework, our management concluded that our internal control over financial reporting was effective as of December 31, 2009. The effectiveness of our internal control over financial reporting as of December 31, 2009 has been audited by PricewaterhouseCoopers LLP, the independent registered certified public accounting firm that audited our consolidated financial statements included in this Annual Report on Form 10-K, as stated in their report, which is included on page F-2.

### Changes in Internal Controls Over Financial Reporting

There were no changes in our internal control over financial reporting identified in connection with the evaluation required by paragraph (d) of Exchange Act Rules 13a-15 and 15d-15 during the quarter ended December 31, 2009 that have materially affected or are reasonably likely to materially affect our internal control over financial reporting.

It should be noted that any system of controls, however well designed and operated, can provide only reasonable, and not absolute, assurance that the objectives of the system will be met. In addition, the design of any control system is based in part upon certain assumptions about the likelihood of future events. Because of these and other inherent limitations of control systems, there is only

the reasonable assurance that our controls will succeed in achieving their goals under all potential future conditions.

23.    The statements contained in ¶¶ 18-22 were materially false and misleading when made because the defendants failed to disclose or indicate the following:  (1) that defendants had improperly accounted for interest expense related to the amortization of certain financing fees; (2) that as a result, defendants had materially overstated Royal Caribbean's profitability;  (3) that the Company's financial statements were not prepared in accordance with GAAP; (4) that the Company lacked adequate internal and financial controls; and (5) that, as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

24.    On January 27, 2011, the Company issued a press release entitled "Royal Caribbean Reports Better Than Expected Results and Forward Guidance."   Therein, the Company stated, in relevant part:

> Royal Caribbean Cruises Ltd. (NYSE, OSE: RCL) today announced better than expected fourth quarter and full year 2010 results and provided earnings guidance for 2011.
>
> *        *        *
>
> **For the Full Year 2010:**
>
> *        *        *
>
> - **_Net income was $547.5 million, or $2.51 per share versus $162.4 million, or $0.75 per share in 2009._**
>
> **2011 Guidance:**
>
> - Net Yields are expected to improve 4% to 6% for the full year and 2% to 3% in the first quarter;
> - NCC excluding fuel are expected to increase approximately 2% for the full year and the first quarter;
> - **_EPS is expected to be between $3.25 and $3.45 for the full year and $0.10 to $0.15 for the first quarter of 2011, based on current fuel prices and currency exchange rates._**
>
> **_"These improved results reflect the strong reception our new ships have received along with the solid branding our different cruise brands have enjoyed," said Richard D. Fain, chairman and chief executive officer._** Fain

9

continued, "WAVE is off to a solid start and supports our earlier confidence in meaningful pricing recovery and record financial performance in 2011."

\*       \*       \*

**Full Year 2010 Results**

***Net income for the full year 2010 was $547.5 million, or $2.51 per share, compared to net income of $162.4 million, or $0.75 per share, for the full year 2009.*** Revenues for the full year 2010 increased 15% to $6.8 billion from revenues of $5.9 billion for the full year 2009. Net cruise costs excluding fuel declined for the third year in a row and were down 1.6%. Despite significant market price increases, fuel costs per metric ton increased only 1% to $493 as a result of the company's hedging program. Since 2005, the company has reduced energy consumption per APCD by 15% and full year 2010 consumption was 1,311,000 metric tons.

**2011 Outlook**

The company reported that early "WAVE season" bookings have been encouraging and booked load factors and average per diems are ahead of same time last year. On an as reported basis, the company expects net yields to increase between 4% and 6% for the full year and 2% to 3% for the first quarter of 2011. On a Constant Currency basis, Net Yields are forecasted to be up between 4% and 5% for the full year and to increase 1% to 2% in the first quarter of 2011.

On a Constant Currency basis, NCC excluding fuel are forecasted to be up 1% to 2% for the full year and the first quarter of 2011. On an as reported basis, NCC excluding fuel are expected to be up approximately 2% for the full year and the first quarter of 2011.

Based upon the above and current fuel prices and currency exchange rates, ***the company expects full year EPS will be between $3.25 and $3.45 per share. "Our company continues to focus on costs and improving its financial performance," said Brian J. Rice, executive vice president and chief financial officer. "This focus, combined with the improving pricing power of our brands should generate significant earnings opportunities as we move into 2011 and beyond."*** [Emphasis added.]

25.     On February 24, 2011, Royal Caribbean filed its 2010 Annual Report with the SEC on Form 10-K.  The Company's Form 10-K was signed by the Individual Defendants, and reaffirmed the Company's financial results previously announced on January 27, 2011.  The Company's Form 10-K also contained Sarbanes-Oxley required certifications, substantially similar to the certifications contained in ¶ 20, *supra*.  Additionally, the Form 10-K stated, in relevant part:

**Item 9A. Controls and Procedures**

**Evaluation of Disclosure Controls and Procedures**

Our management, with the participation of our Chairman and Chief Executive Officer and our Executive Vice President and Chief Financial Officer, conducted an evaluation of the effectiveness of our disclosure controls and procedures, as such term is defined in Exchange Act Rule 13a-15(e), as of the end of the period covered by this report. Based upon such evaluation, our Chairman and Chief Executive Officer and Executive Vice President and Chief Financial Officer concluded that those controls and procedures are effective to provide reasonable assurance that information required to be disclosed by us in the reports that we file or submit under the Exchange Act is accumulated and communicated to management, including our Chairman and Chief Executive Officer and our Executive Vice President and Chief Financial Officer, as appropriate, to allow timely decisions regarding required disclosure and are effective to provide reasonable assurance that such information is recorded, processed, summarized and reported within the time periods specified by the SEC's rules and forms.

**Management's Report on Internal Control Over Financial Reporting**

Our management is responsible for establishing and maintaining adequate internal control over financial reporting, as such term is defined in Exchange Act Rule 13a-15(f). Our management, with the participation of our Chairman and Chief Executive Officer and our Executive Vice President and Chief Financial Officer, conducted an evaluation of the effectiveness of our internal control over financial reporting based on the framework in Internal Control-Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission. Based on this evaluation, management concluded that our internal control over financial reporting was effective as of December 31, 2010. The effectiveness of our internal control over financial reporting as of December 31, 2010 has been audited by PricewaterhouseCoopers LLP, the independent registered certified public accounting firm that audited our consolidated financial statements included in this Annual Report on Form 10-K, as stated in its report, which is included herein on page F-2.

**Changes in Internal Controls Over Financial Reporting**

There were no changes in our internal control over financial reporting identified in connection with the evaluation required by paragraph (d) of Exchange Act Rules 13a-15 during the quarter ended December 31, 2010 that have materially affected or are reasonably likely to materially affect our internal control over financial reporting.

26.     On April 28, 2011, the Company issued a press release entitled "Royal Caribbean Reports First Quarter Results and Updates 2011 Guidance." Therein, the Company stated, in relevant part:

Royal Caribbean Cruises Ltd. (NYSE, OSE: RCL) today announced better than expected first quarter results and updated guidance for the remainder of 2011.

**Key Highlights**

For the First Quarter 2011:

- ***Net income was $91.6 million, or $0.42 per share versus***, $87.4 million, or $0.40 per share in 2010. Included in the 2010 results was a one-time gain of $85.6 million, or $0.39 per share related to a legal settlement;

- Net Yields increased 4.0% (2.8% on a Constant-Currency basis);

- Net Cruise Costs per APCD ("NCC") were up 0.2% (down 0.1% on a Constant-Currency basis);

- Included in Other Income/(Expense) was an $0.11 per share marked-to-market gain on the company's fuel option portfolio.

**2011 Guidance:**

The company has been able to largely offset higher fuel prices through its hedging strategies as well as the impact of currency exchange rates. The effects of recent geopolitical events in Northern Africa and Japan have also been partially offset by improvements in the company's other itineraries. As a result, full year EPS guidance has been reduced by $0.15 per share to a range of $3.10 to $3.30.

***"The year started off with a roar -- strong bookings, low costs and solid profits -- and in the first quarter every one of our brands exceeded its forecast," said Richard D. Fain, chairman and chief executive officer.*** Fain added, "Unfortunately, the events in Northern Africa and Japan have turned what was shaping up as a spectacular year into merely a very good one. Nonetheless, other than adjustments for fuel pricing, *our earnings guidance for the year is essentially intact despite these dramatic geopolitical events.* The demand for the majority of our products has remained quite strong and even the impacted itineraries have begun to improve."

**First Quarter 2011 Results**

***Royal Caribbean Cruises Ltd. today announced net income for the first quarter 2011 of $91.6 million, or $0.42 per share.*** This compares to net income of $87.4 million, or $0.40 per share, in the first quarter of 2010, which included a gain on a legal settlement of $85.6 million, or $0.39 per share. An $0.11 per share marked-to-market gain on the company's fuel option portfolio is included in first quarter 2011 results.

Revenues improved to $1.7 billion in the first quarter of 2011 compared to $1.5 billion in the first quarter of 2010 as a result of capacity increases and yield improvements. Net Yields for the first quarter of 2011 increased 4.0% (2.8% on a Constant-Currency basis). The company saw improvement in both ticket and onboard revenue yields and across all major product groups.

*      *      *

**2011 Outlook**

The company provided the following updates to its forward guidance:

**Revenue:**

*For the full year, the company expects Net Yields to improve 5% to 7% on an as-reported basis and 3% to 5% on a Constant-Currency basis.* For the second quarter, the company expects Net Yields to improve approximately 5% on an as-reported basis and between 1% and 2% on a Constant-Currency basis. [Emphasis added.]

27.    Also on April 28, 2011, Royal Caribbean filed its Quarterly Report with the SEC on Form 10-Q.  The Company's Form 10-Q was signed by Defendant Rice, and reaffirmed the Company's financial results announced that same day.   The Company's Form 10-Q also contained Sarbanes-Oxley required certifications, substantially similar to the certifications contained in ¶ 20, *supra*.  Additionally, the Form 10-Q stated, in relevant part:

**Basis for Preparation of Consolidated Financial Statements**

The unaudited consolidated financial statements are prepared in accordance with accounting principles generally accepted in the United States of America. Estimates are required for the preparation of financial statements in accordance with these principles. Actual results could differ from these estimates.

All significant intercompany accounts and transactions are eliminated in consolidation. We consolidate entities over which we have control, usually evidenced by a direct ownership interest of greater than 50% and variable interest entities where we are determined to be the primary beneficiary. See Note 5. Goodwill and Other Assets for further information regarding our variable interest entities. For affiliates we do not control but over which we have significant influence on financial and operating policies, usually evidenced by a direct ownership interest from 20% to 50%, the investment is accounted for using the equity method. We consolidate the operating results of Pullmantur and its wholly-owned brand, CDF Croisières de France, on a two-month lag to allow for more timely preparation of our consolidated financial statements. No material events or transactions affecting Pullmantur and its wholly-owned brand, CDF Croisières de France, have occurred during the two-month lag period of February 2011 and March 2011 that would require disclosure or adjustment to our consolidated financial statements as of March 31, 2011.

We believe the accompanying unaudited consolidated financial statements contain all normal recurring accruals necessary for a fair statement. Our revenues are seasonal and results for interim periods are not necessarily indicative of results for the entire year.

\*        \*        \*

**Evaluation of Disclosure Controls and Procedures**

Our management, with the participation of our Chairman and Chief Executive Officer and Executive Vice President and Chief Financial Officer, conducted an evaluation of the effectiveness of our disclosure controls and procedures, as such

term is defined in Exchange Act Rule 13a-15(e), as of the end of the period covered by this report. Based upon such evaluation, our Chairman and Chief Executive Officer and Executive Vice President and Chief Financial Officer concluded that those controls and procedures are effective to provide reasonable assurance that information required to be disclosed by us in the reports that we file or submits under the Exchange Act is accumulated and communicated to management, including our Chairman and Chief Executive Officer and our Executive Vice President and Chief Financial Officer, as appropriate, to allow timely decisions regarding required disclosure and are effective to provide reasonable assurance that such information is recorded, processed, summarized and reported within the time periods specified by the SEC's rules and forms.

**Changes in Internal Control Over Financial Reporting**

There were no changes in our internal control over financial reporting identified in connection with the evaluation required by paragraph (d) of Exchange Act Rules 13a-15 during the quarter ended March 31, 2011 that have materially affected or are reasonably likely to materially affect our internal control over financial reporting.

28.    The statements contained in ¶¶ 24-27 were materially false and misleading when made because defendants failed to disclose or indicate the following:  (1) that defendants had improperly accounted for interest expense related to the amortization of certain financing fees; (2) that as a result, defendants had materially overstated Royal Caribbean's profitability;  (3) that the Company's financial statements were not prepared in accordance with GAAP; (4) that the Company lacked adequate internal and financial controls; (5) that, as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times; and (6) that the defendants' statements that the Company was operating according to plan, along with their statements regarding the Company's earnings guidance and prospects, were lacking in any reasonable basis when made.

**The Truth Begins to Emerge**

29.    On July 27, 2011, after the market closed, Royal Caribbean shocked investors when it issued a press release entitled "Royal Caribbean Details Interest Expense Accounting Revision, Reports Second Quarter Results, Updates 2011 Guidance and Reinstates Dividend."

This press release revealed that an accounting error would reduce 2011 full year earnings per share ("EPS") by $0.10.  Further, the accounting error reduced 2010 EPS by $0.15, and reduced 2009 EPS by $0.05.  Additionally, the Company reduced its full year earnings guidance by an additional $0.10 per share, for reasons wholly unrelated to the accounting issue.  The press release, in relevant part, revealed:

> Royal Caribbean Cruises Ltd. (NYSE, OSE: RCL) today made a series of financial announcements, the most salient points of which are:
>
> (1) *Management identified an error in the previous accounting treatment of interest expense relating to its amortization of certain financing fees and has revised its past financial statements to reflect the correct accounting (the "Interest Expense Revision").*
>
> (2) *Second quarter EPS was 47 cents before the Interest Expense Revision. After adjusting for the revision, the company reported earnings of 43 cents per share which is the midpoint of previous guidance range of 40 cents to 45 cents.*
>
> (3) *Excluding the Interest Expense Revision, full year 2011 EPS guidance is now expected to be $3.05 to $3.15, reflecting a 10 cent reduction to prior guidance on continuing pricing softness for Eastern Mediterranean sailings, partially offset by strong cost savings. The Interest Expense Revision is forecasted to reduce 2011 EPS by 20 cents resulting in full year 2011 EPS guidance of $2.85 to $2.95.*
>
> (4) The Board of Directors reinstated the quarterly dividend at a rate of 10 cents per share.
>
> **Key Highlights**
>
> Interest Expense Accounting Revision: The financial statements included in this release have been revised [].  This revision is not a restatement and prior period financial statements may still be relied upon. The company also noted that cash flows, operating income, Net Yields and Net Cruise Costs were not impacted by the revision.
>
> **Results For the Second Quarter 2011:**
>
> Net income was $93.5 million, or $0.43 per share, versus $53.7 million, or $0.25 per share, in 2010;
>
> Net Yields increased 3.8% (0.8% on a Constant-Currency basis). Excluding Mediterranean sailings, Net Yields increased 9.8% (7.3% on a Constant-Currency basis);
>
> Net Cruise Costs per APCD ("NCC") excluding fuel increased by 2.3% (decreased 0.1% on a Constant-Currency basis).
>
> **Full Year Guidance:**

While most of the company's product groups are performing at or above prior expectations, ongoing pressures from events in the Eastern Mediterranean have reduced Constant-Currency Net Yield expectations for the year by 150 basis points since April;

***Full year 2011 Net Yields are expected to increase approximately 5% (2% to 3% on a Constant-Currency basis).*** Excluding Mediterranean sailings, yields are expected to increase approximately 8% (approximately 6% on a Constant-Currency basis);

The company has been able to further reduce its cost outlook for the year and has reduced its Constant-Currency NCC excluding fuel by 100 basis points;

***Full year 2011 EPS is expected to be within a range of $2.85 to $2.95. Excluding the Interest Expense Revision, EPS expectations would have been $3.05 to $3.15 per share.***

\*       \*       \*

"Since our last guidance, the turmoil in the Eastern Mediterranean has caused pricing to deteriorate even further for this region. Fortunately, our other markets are performing exceptionally well and we have been able to take our cost reductions to the next level. As a result, profitability is still growing nicely year-over-year, but these disruptions have undermined our expectations for even better performance this year," said Richard D. Fain, chairman and chief executive officer. Fain continued, "Our long-term outlook remains highly positive and, with a strengthening balance sheet and solid liquidity, we are pleased to reinstate our dividend. It is our intention to continue paying quarterly dividends at this level or higher as our performance improves and we work toward our goal of returning to Investment Grade."

### Second Quarter 2011 Results

Royal Caribbean Cruises Ltd. today announced net income of $93.5 million, or $0.43 per share, versus $53.7 million, or $0.25 per share, in 2010.

Revenues improved to $1.8 billion in the second quarter of 2011 compared to $1.6 billion in the second quarter of 2010 as a result of capacity increases and yield improvements. Net Yields for the second quarter of 2011 increased 3.8% (0.8% on a Constant-Currency basis). Excluding Mediterranean sailings, Net Yields in the second quarter improved 9.8% (7.3% on a Constant-Currency basis).

Costs in the second quarter of 2011 were virtually flat on a constant-currency basis and most expense categories performed better than expected. NCC excluding fuel increased 2.3% (decreased 0.1% on a Constant-Currency basis).

\*       \*       \*

### 2011 Outlook

The company provided the following updates to its forward guidance:

### Revenue:

> ***For the full year, the company expects Net Yields to improve approximately 5%
> on an as-reported basis and 2% to 3% on a Constant-Currency basis.*** For the
> third quarter, the company expects Net Yields to improve approximately 5% on
> an as-reported basis and 1% to 2% on a Constant-Currency basis. Excluding
> Mediterranean sailings, third quarter Net Yields are expected to increase
> approximately 11% (approximately 9% on a Constant-Currency basis). [Emphasis
> added.]

30.    On July 28, 2011, the media reported on and clarified the reality of Royal
Caribbean's reduced forecast, and in particular, the way in which (according to *The Motley Fool*)
the Company "attempted to slide another $0.10 reduction in full-year earnings under the radar in
conjunction with the press release, completely unrelated to the accounting snafu."  As the
*Associated Press* reported that day, Royal Caribbean "reduced its full-year earnings guidance by
10 cents per share even without the accounting change, and by 20 cents per share with the
change."

31.    On these shocking revelations, shares of the Company's stock fell $4.50 per share,
or 12.58 percent, to close on July 28, 2011 at $31.26 per share, on unusually heavy trading
volume.

32.    By July 29, 2011, analysts started cutting their ratings on Royal Caribbean and
downgrading the stock's price target.  For instance, JP Morgan cut its Royal Caribbean rating to
"Neutral" from "Overweight," while Raymond James lowered its target price from $46 to $39.
In the days that followed, the Company's shares continued to decline, and closed as low as
$24.00 per share on August 8, 2011.

### ROYAL CARIBBEAN'S VIOLATION OF GAAP RULES
### IN ITS FINANCIAL STATEMENTS
### <u>FILED WITH THE SEC</u>

33.    These financial statements and the statements about the Company's financial
results were false and misleading, as such financial information was not prepared in conformity
with GAAP, nor was the financial information a fair presentation of the Company's operations

due to the Company's improper accounting for, and disclosure about its revenues, in violation of GAAP rules.

34.    GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time. Regulation S-X (17 C.F.R. § 210.4 01(a) (1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate. Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure which would be duplicative of disclosures accompanying annual financial statements. 17 C.F.R. § 210.10-01(a).

35.    Given these accounting irregularities, the Company announced financial results that were in violation of GAAP and the following principles:

    (a)    The principle that "interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements" was violated (APB No. 28, ¶10);

    (b)    The principle that "financial reporting should provide information that is useful to present to potential investors and creditors and other users in making rational investment, credit, and similar decisions" was violated (FASB Statement of Concepts No. 1, ¶34);

    (c)    The principle that "financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events, and circumstances that change resources and claims to those resources" was violated (FASB Statement of Concepts

No. 1, ¶40);

(d)     The principle that "financial reporting should provide information about an enterprise's financial performance during a period" was violated (FASB Statement of Concepts No. 1, ¶42);

(e)     The principle that "financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it" was violated (FASB Statement of Concepts No. 1, ¶50);

(f)     The principle that "financial reporting should be reliable in that it represents what it purports to represent" was violated (FASB Statement of Concepts No. 2, ¶¶ 58-59);

(g)     The principle that "completeness, meaning that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions" was violated (FASB Statement of Concepts No. 2, ¶79); and

(h)     The principle that "conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered" was violated (FASB Statement of Concepts No. 2, ¶95).

36.     The adverse information concealed by Defendants during the Class Period and detailed above was in violation of Item 303 of Regulation S-K under the federal securities law (17 C.F.R. §229.303).

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

37.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased Royal Caribbean securities during the Class Period (the "Class").  Excluded from the Class are defendants, directors and officers of Royal Caribbean and their families and affiliates.

38.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  According to the Company's Form 10-Q filed with the SEC on August 1, 2011, Royal Caribbean had over 217 million shares of stock outstanding, owned by thousands of persons.

39.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     Whether the Securities Exchange Act was violated by defendants;

(b)     Whether defendants omitted and/or misrepresented material facts;

(c)     Whether defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether defendants knew or recklessly disregarded that their statements were false and misleading;

(e)     Whether the prices of Royal Caribbean securities were artificially inflated; and

(f)     The extent of damage sustained by Class members and the appropriate measure of damages.

40.     Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

41.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

42.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## LOSS CAUSATION/ECONOMIC LOSS

43.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.  The price of Royal Caribbean's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.  As a result of their purchases of Royal Caribbean securities during the Class Period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## SCIENTER ALLEGATIONS

44.     During the Class Period, the defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made or acted in reckless disregard of the true information known to them at the time.  In so doing, the defendants participated in a scheme to defraud and committed acts, practices and participated in a course of business that operated as a fraud or deceit on purchasers of Royal Caribbean's securities during the Class Period.

45.     Additionally, during the Class Period, and with the Company's securities trading at artificially inflated prices, the Individual Defendants sold 949,453 shares of their personally

held or controlled Royal Caribbean stock for proceeds of $36,755,056.  More specifically, Defendant Fain sold 797,000 shares of his personally held or controlled Royal Caribbean stock at artificially inflated prices for proceeds of $30,790,500.  Defendant Rice sold 142,685 shares of his personally held or controlled Royal Caribbean stock at artificially inflated prices for proceeds of $5,610,544.  Defendant Pujol sold 9,768 shares of his personally held or controlled Royal Caribbean stock at artificially inflated prices for proceeds of $354,021.

**Applicability of Presumption of Reliance:**
**Fraud on the Market Doctrine**

46.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)     The omissions and misrepresentations were material;

(c)     The Company's securities traded in an efficient market;

(d)     The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

(e)     Plaintiff and other members of the Class purchased Royal Caribbean securities between the time defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

47.     At all relevant times, the market for Royal Caribbean securities was efficient for the following reasons, among others: (a) as a regulated issuer, Royal Caribbean filed periodic public reports with the SEC; and (b) Royal Caribbean regularly communicated with public investors via established market communication mechanisms, including through regular

disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts and other similar reporting services.

## NO SAFE HARBOR

48.     Defendants' verbal "Safe Harbor" warnings accompanying its oral forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.

49.     The defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Royal Caribbean who knew that the FLS was false.  None of the historic or present tense statements made by defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

50.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51.     During the Class Period, Royal Caribbean and the Individual Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as

alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Royal Caribbean securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, these defendants, and each of them, took the actions set forth herein.

52.     Royal Caribbean and the Individual Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Royal Caribbean securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. These defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons.

**SECOND CLAIM**
**Violation of Section 20(a) of**
**The Exchange Act Against the Individual Defendants**

53.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54.     The Individual Defendants acted as controlling persons of Royal Caribbean within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were

provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

56.     As set forth above, Royal Caribbean and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of these defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

      (a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

      (b)     Awarding compensatory damages and equitable relief in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

      (c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)      Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: September 8, 2011                              Respectfully submitted,


                                                     /s/ *Joseph E. White*
                                                     Joseph E. White III (Florida Bar # 0621064)
                                                     Christopher S. Jones (Florida Bar # 306230)
                                                     Lester R. Hooker (Florida Bar # 0032242)
                                                     Brandon T. Grzandziel (Florida
                                                     Bar#0058732)
                                                     **SAXENA WHITE P.A.**
                                                     2424 N. Federal Highway, Suite 257
                                                     Boca Raton, FL 33431
                                                     Telephone: (561) 394-3399
                                                     Facsimile: (561) 394-3382


                                                     **KESSLER TOPAZ
                                                     MELTZER & CHECK, LLP**
                                                     D. Seamus Kaskela
                                                     skaskela@ktmc.com
                                                     David M. Promisloff
                                                     dpromisloff@ktmc.com
                                                     Adrienne O. Bell
                                                     abell@ktmc.com
                                                     280 King of Prussia Road
                                                     Radnor, PA 19087
                                                     (610) 667-7706
                                                     (610) 667-7056 (fax)


                                                     *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 8, 2011, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system.

*/s/ Joseph E. White*
Joseph E. White